WINNETT PACIFIC OIL CO., APPELLANT, *v.* WILSON,
RESPONDENT.

(No. 5,721.)

(Submitted September 18, 1925. Decided October 10, 1925.)

[239 Pac. 1040.]

*Cancellation of Instruments—Oil-well Drilling Contract—Burden of Proof—Pleading — Conclusions — Findings — When Conclusive.*

Cancellation of Instruments — Oil and Gas—Well Drilling Contract—Burden of Proof.
1. In an action for the cancellation of a contract for the drilling of an oil-well for failure of defendant, among other things, to shut off water encountered in a certain formation, in which action defendant filed a cross-complaint to recover the contract price or the number of feet drilled when he was stopped by plaintiff from performing further, the burden was upon plaintiff to show that defendant had failed in the manner charged.

Same—Oil and Gas—Well Drilling Contract—Construction.
2. Where a contract for the drilling of an oil-well in one paragraph provided that the first water encountered should be shut off through a certain formation, in good and workmanlike manner, and the succeeding one declared that all waters should be shut off in like manner, the second referred to the first and required the shutting off of the water found in the formation mentioned, and did not make it incumbent upon defendant to shut off water thereafter encountered.

Pleading—Conclusions.
3. An allegation in the complaint that defendant had failed to comply with the requirements of a certain paragraph of his contract was a mere conclusion of the pleader and did not present any fact which could be put in issue.

Equity—Findings—When Conclusive.
4. Where in an equity case the evidence is conflicting, the finding of the trial court upon testimony which is not so far improbable as to be unworthy of belief will not be disturbed on appeal.

Appeal and Error, 4 C. J., sec. 2870, p. 901, n. 1.
Mines and Minerals, 27 Cyc., p. 746, n. 11.
Pleading, 31 Cyc., p. 54, n. 97.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

Action by the Winnett Pacific Oil Company against Dan Wilson, who filed a cross-complaint. From a judgment dismissing the complaint and for defendant on his cross-complaint plaintiff appeals. Affirmed.

*Mr. E. K. Cheadle, Mr. S. W. Pennock* and *Mr. Charles J. Marshall,* for Appellant, submitted a brief; *Mr. Marshall* argued the cause orally.

*Mr. R. H. Wiedman* and *Mr. Ralph J. Anderson,* for Respondent, submitted a brief; *Mr. Wiedman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In October, 1923, a contract was entered into between the Winnett Pacific Oil Company and Dan Wilson, by the terms of which Wilson agreed to drill an oil well for the company on the Flatwillow structure in Fergus (now Petroleum) county to a minimum depth of 2,500 feet or to a maximum depth of 3,500 feet. The company agreed to pay Wilson $8 per foot for the first 1,500 feet and $9 per foot for the excess, one-half of the contract price to be paid upon the completion of each 500 feet drilled, and the remainder on the completion of the well. The contract provided that the "first water" encountered should be shut off "with 20-inch" casing through the Eagle sandstone, and that, as each payment became due, Wilson should pay for all labor and materials used by him in prosecuting the work or secure lien waivers from those who might be entitled to liens upon the property. When the well had been drilled to a depth of 502 feet, Wilson demanded payment of the $2,000 which he claimed was then due him, but the demand was refused. He then refused to proceed unless and until he was paid, and later this action was instituted to secure a cancellation of the contract.

In its complaint, the plaintiff charged that Wilson had violated the contract in these particulars: (1) He failed to shut off the water with twenty-inch casing through the Eagle sandstone, or at all; (2) he failed to use a drill of sufficient size to permit twenty-inch casing to be lowered through the Eagle sandstone, with the result that casing furnished by the plaintiff of the value of $2,000 was rendered useless; (3) he failed to pay for labor and materials furnished, and failed to secure lien waivers from the claimants; (4) he ceased work on the well, and refused to proceed without just cause.

These charges were all denied, and by a cross-complaint defendant alleged that he performed every provision of the contract by him to be performed, until he was prevented from further performance by the wrongful acts of the plaintiff, which alleged wrongful acts are set forth in detail. He prayed for judgment for $4,000, the contract price for the 500 feet drilled. The allegations of the cross-complaint were denied by the reply.

The trial of the cause to the court without a jury resulted in a judgment dismissing the plaintiff's complaint and awarding defendant $4,000 upon his cross-complaint. From that judgment plaintiff appealed and has presented for our determination the single question: Is there any substantial evidence to justify the trial court's finding that defendant complied with the contract until he was prevented from proceeding further by the wrongful acts of the plaintiff?

There is not any controversy over these facts: Defendant drilled the well to a depth of 502 feet. He encountered water at a depth of 233 feet below the surface which he did not shut off in any manner or at all. He drove twenty-inch casing down the well to a depth of 221 feet, was unable to drive it to a lower depth, and, when he undertook to pull it from the well, the line parted, and he abandoned the effort.

The evidence discloses that on the Flatwillow structure generally the geological formations in stratigraphic sequence are the Claggett or surface formation, the Eagle sandstone

immediately below the Claggett, the Colorado shale immediately below the Eagle sandstone, *etc.* It appears also that locally the lower portion of the Eagle sandstone is designated the Virgelle sand; that the Eagle sandstone is not a typical water-bearing sand, but does contain some water, particularly in the Virgelle sand.

It is the contention of plaintiff that the Colorado shale does not contain any water-bearing sands; that the purpose of the provision of the contract requiring the first water encountered to be shut off through the Eagle sandstone was that the well might be drilled into the Colorado shale, dry; that the water encountered at 233 feet below the surface was the "first water" within the meaning of the contract; that the twenty-inch casing was not carried down through the Eagle sandstone or to a depth sufficient to shut off the water; that by drilling into the Colorado shale to a depth of 260 feet or more, with that water continuously present in the well, defendant violated the contract to the great damage of plaintiff; that the twenty-inch casing provided by the company at an expense of more than $2,000 was rendered valueless by being driven into the well from which it could not be removed; that the well itself, in the condition in which it was left by the defendant, is not of any value; that the defendant ceased work and refused to continue without any just cause; and that by reason of these wrongful and negligent acts, defendant had not earned, and was not entitled to, any compensation for the work he did.

It is the contention of the defendant that at the point where this well was to be drilled, the Eagle sandstone is the surface formation; that it does not exceed fifty feet in thickness; that the "first water" encountered in drilling was encountered in the Eagle sandstone only a few feet below the surface; that this water was shut off by means of the twenty-inch casing which was extended down through the Eagle sandstone and to a considerable distance into the Colorado shale; that the water encountered at a depth of 233 feet below the surface was the

second water encountered; that this water was in a sand seven feet in thickness in the Colorado shale; that the reason for sinking the twenty-inch casing below the point where the first water was shut off was to case off the second water and thereby enable defendant to prosecute his work with greater dispatch; that the bit used in sinking the well drilled a hole sufficiently large to admit the twenty-inch casing through the Eagle sandstone; that the casing driven to a depth of 221 feet has not been lost or depreciated in value; that it is perfectly feasible to shut off the second water with fifteen and one-half inch casing and continue the work in strict compliance with the terms of the contract; and that the fact that the well below 240 feet was drilled with the second water present did not damage the plaintiff or lessen the value of the work done.

Each party produced witnesses who testified in support of his contention, but the only witnesses qualified to testify concerning the geological formations were C. J. Stone, a geologist who testified as a witness for the plaintiff, and Fred Stone, a geologist who testified in behalf of the defendant.

C. J. Stone testified that he located this well for the plaintiff company; that he has located many wells in that vicinity, particularly in the Cat Creek field; that the surface formation is the Claggett, the next below that is the Eagle sandstone, and the next below that is the Colorado shale; that the lower portion of the Eagle sandstone is designated locally the Virgelle sand. He testified further: "The Eagle will run from 50 to 150 feet thick. * * * I imagine the Eagle sand there [at the location of the well in question] would be somewhere in the neighborhood of 150 feet thick, but it may be not over 50 feet. The sands are irregular as to their pitch."

F. C. Bennett, treasurer and manager of the plaintiff company, though not a geologist, testified on behalf of the plaintiff without objection as follows: "Q. Now, do you have any idea as to the formation in that particular section? A. Well, they started in there in the Eagle sandstone and got on down into the Colorado shale; the first nine or ten feet is gravel."

If the defendant had not produced any evidence, the court
[1] would have been compelled to find against the plaintiff
upon its first contention, for the burden was upon it to
show that the first water was not shut off with twenty-
inch casing through the Eagle sandstone, and the foregoing
testimony not only fails to sustain the charge made in the
complaint, but tends fairly to show that the twenty-inch cas-
ing was extended, not only through the Eagle sandstone, but
to a considerable distance into the Colorado shale, and that
the water encountered at a depth of 233 feet below the surface
must have been in the Colorado shale, and could not have been
shut off by casing which extended only through the Eagle
sandstone, and this is true, notwithstanding the witness
Learned, a nonexpert, expressed the opinion that the Colorado
shale was not reached until the well was drilled to a depth of
240 feet.

Fred Stone, a witness for defendant, testified that at the
location of this well the Eagle sandstone is the surface forma-
tion; that it does not exceed fifty feet in thickness, and that
the Colorado shale carries water-bearing sands.

Upon this record the trial court was fully justified in find-
ing as it did; indeed, it could not have done otherwise.

In their brief, counsel for plaintiff say that C. J. Stone
testified that the water encountered at 233 feet below the sur-
face was in the Virgelle sand or lower portion of the Eagle
sandstone, but the statement cannot be justified. The record
discloses that in rebuttal C. J. Stone was asked to state in what
sand that water was encountered, but an objection to the ques-
tion was sustained. Counsel for plaintiff then made an offer
of proof, but the offer was excluded, and error is not predi-
cated upon either ruling. Hence we repeat that the only
evidence touching the location and thickness of the Eagle
sandstone is that referred to above.

Counsel for plaintiff contend further that, even though the
[2, 3] water encountered 233 feet below the surface was not
the "first water" within the meaning of paragraph 12 of the

contract, and even though it could not have been shut off with twenty-inch casing through the Eagle sandstone, nevertheless defendant was required to shut it off by some practical means, and, since he failed to do so, he was not entitled to any compensation at the time he made his demand. In support of this contention counsel refer to paragraph 13 of the contract, which reads: "All waters to be shut off in good and workmanlike manner." This contention appears to be an afterthought. The only reference to the provision of paragraph 13 in the complaint is the following: "That the said defendant has entirely failed, neglected, and refused to comply with the requirements of paragraph 13 of said contract." This is but the bald conclusion of the pleader. There is not a single fact stated which could be put in issue. Furthermore, it is apparent that the provision in paragraph 13 refers to the obligation imposed by paragraph 12. In other words, the two paragraphs, considered together, would read: "First water to be shut off with twenty-inch casing through the Eagle sandstone, in a good and workmanlike manner"; and that this is the meaning intended by the parties to the contract is not open to doubt. Bennett, the manager of the plaintiff company, testified that the contract was negotiated for the company by C. J. Stone, Mr. Coats and himself. When C. J. Stone was asked the purpose of having the contract provide for casing off the water as it does he answered: "Well, I had an experience in that immediate vicinity, and I was told that there was some water in the Eagle sandstone. But the idea was to shut off all water that might be found in the Eagle sand and enter the Colorado shale with a dry hole. The object was simply a saving of time, it meant that if you got into the Colorado you could drill 1,000 feet or 1,500 feet dry very rapidly, and if water come in it would take longer. I am not a driller, but my advice to Mr. Bennett was that the casing should shut off all water in the Eagle sandstone and enter the Colorado shale with a dry hole." In other words, it was the water which might be encountered in the Eagle sandstone

that defendant was required to shut off. Apparently the parties did not contemplate that water would be encountered elsewhere, but did anticipate that water would appear in the Eagle sandstone near the surface, and that only a small quantity of twenty-inch casing would be required to shut it off through that formation. Defendant testified that, before any casing was furnished, Bennett stated that two lengths of twenty-inch casing would be sufficient for the purpose contemplated by the contract, and the defendant agreed with him. This testimony is not controverted, and the record discloses that the lengths of casing were from sixteen to twenty feet.

The charge that defendant failed to use a bit which would drill a hole of sufficient size to admit a casing twenty inches in diameter falls of its own weight. It may be well enough to say that twenty-inch casing will not go into a nineteen-inch hole, but whatever designation may be given the bit used by the defendant, whether it be called a nineteen-inch bit or a nine-inch bit, the fact remains, as established by plaintiff's witnesses, that it drilled a hole large enough to admit twenty-inch casing to a depth of 221 feet, which depth extended through the Eagle sandstone and far into the Colorado shale.

The charge that defendant failed to present lien waivers is [4] also an afterthought. Plaintiff does not pretend to say that any liens were filed by laborers employed by the defendant or by materialmen from whom defendant procured supplies. Although Bennett, plaintiff's manager, testified that waivers were not presented, he made it plain that such failure was not a reason for plaintiff's refusal to pay. Interrogated by plaintiff's counsel, he testified: "Q. Now, when he [Wilson] reached the depth of 500 feet you refused payment? A. Yes, sir. Q. As agent for the plaintiff in this case? A. Yes, sir. Q. For what reason? A. He had not complied with the contract by shutting off the water."

In his defense, Wilson testified that he did present lien waivers, and the trial court was free to accept his testimony as opposed to that given by Bennett.

The court found that plaintiff wrongfully refused to make the payment due when the first 500 feet were drilled, and that it refused to permit defendant to continue operations.

The utmost that can be said of any of the charges contained in the complaint is that the evidence is conflicting, and the trial court, having found the issues in favor of the defendant upon testimony which cannot be characterized as so far improbable as to be unworthy of belief, this court will not interfere.

While it may be conceded that there are some discordant statements in the story told by defendant, yet, when the entire record is considered, we think it fairly apparent that the findings are supported by a preponderance of the evidence.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.